UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PREMIER HEALTH ASSOCIATES, LLC, <br><br> Plaintiff, <br> v. <br><br> MEDICAL TECHNOLOGY SOLUTIONS, *et al.* <br><br> Defendants. | Civil Action No. 17-331(JLL) <br><br> OPINION |
| MEDICAL TECHNOLOGY SOLUTIONS, <br><br> Defendant/Third-Party Plaintiff, <br> v. <br><br> BYTE SIZED SOLUTIONS LLC, <br><br> Third-Party Defendant. | |
| BYTE SIZED SOLUTIONS LLC, <br><br> Defendat/Third-Party Plaintiff, <br> v. <br><br> ALLSCRIPTS HEALTHCARE, LLC, <br><br> Third-Party Defendant. | |

**LINARES,** Chief District Judge

  This matter comes before the Court by way of third-party Defendant Allscripts Healthcare's ("Allscripts") motion to dismiss the third-party complaint of Byte Size Solutions ("Byte"), (ECF No. 80 ("Compl.")), pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF

No. 101). Byte has filed opposition and Allscripts has submitted its reply thereto. (ECF Nos. 114, 121). The Court has read the parties' submissions and considers this matter without oral argument in accordance with Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court denies Allscripts' motion to dismiss in part and grants it in part.

## I. BACKGROUND[1]

The Court writes for the benefit of the parties. As the Court has already addressed the facts giving rise to this litigation at length in a previous Opinion, (ECF No. 90), it need not do so again here and will only give a short recitation of the facts relevant to this motion. This action arises out of the conversion of Plaintiff Premier Health Associates, LLC's ("Premier") practice management data from a NextGen database to an Allscripts database. (Compl. ¶ 1). Premier hired Defendant Medical Technology Solutions ("MTS") to convert the data, who subcontracted with Byte to import the practice management and electronic health record data to the Allscripts system. (Compl. ¶ 2). The data conversion was not successful and Premier lost reams of its patient data. (ECF No. 90 at 3).

Byte alleges that it successfully transferred the practice management and electronic health record data from NextGen to Allscripts. (Compl. ¶ 3). It now claims that Allscripts reprocessed that data "through a faulty interface using inadequate matching logic," creating the data matching irregularities that resulted in Premier's loss of data. (Compl. ¶ 3). The procedure that reprocessed the data was known as a "demographics push," which Allscripts conducted on November 20, 2015, after Byte had already imported Premier's data to Allscripts. (Compl. ¶ 29). Byte points to emails exchanged between Premier's IT manager and business manger on November 21, 2015 noting that

---

[1] This background is derived from Byte's third-party complaint, which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

Allscripts did a "demographics update on the interface," which apparently "de-linked" the charts so that the patient data became scrambled again. (Compl. ¶ 33).

Byte now moves for common law indemnification and contribution against Allscripts. (Compl. ¶¶ 35–40).

## II. LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the Court must take three steps. "First, it must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, '[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

3

## III. DISCUSSION

Allscripts makes two arguments in support of its motion to dismiss. First, it argues that Byte improperly joined Allscripts as a party in violation of Federal Rules of Civil Procedure 14 and 16. (ECF No. 101-2 at 7). Second, Allscripts argues that Byte has failed to state a claim for either common law indemnification or contribution. (ECF No. 101-2 at 14–16).

### A. Joinder

Allscripts first argues that Byte failed to abide by the terms of this Court's scheduling order, (ECF No. 27), when it joined Allscripts as a third-party defendant "more than a full year after the [July 21, 2017] deadline." (ECF No. 101-2 at 7). Allscripts ignores Magistrate Judge Steve Mannion's supplemental scheduling order, issued on November 13, 2017, which states: "If parties are served or joined after this scheduling order, such parties must make their initial disclosures and all other[s] provide their disclosures within 14 days of appearance." (ECF No. 46 ¶ 4(c)). The most logical interpretation of the supplemental scheduling order was that it amended the pre-trial scheduling order to allow for the additional joinder of parties. This interpretation is consistent with the Court's view that the Federal Rules of Civil Procedure provide for the "liberal . . . joinder of parties and claims." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 581 (2005).

Allscripts next argues that Byte violated Federal Rule of Civil Procedure 14 when it failed to get leave of the Court to join Allscripts as a third-party defendant, and that even if Byte had sought leave, it would not have received it. (ECF No. 101-2 at 10–14). Federal Rule of Civil Procedure 14 states that "a defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it[, b]ut the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer." Fed. R. Civ. P. 14(a). Byte was added as a

party to this case on April 6, 2017 when MTS filed a third-party complaint against Byte. (ECF No. 12). Byte answered MTS's third-party complaint on May 24, 2017. (ECF No. 28). However, Byte was only added as a direct defendant when Premier filed its amended complaint on February 6, 2018. (ECF No. 55). Byte moved to dismiss Premier's amended complaint on March 23, 2018, (ECF No. 66), filed its third-party complaint against Allscripts on August 9, 2018, (ECF No. 80), and filed its answer to Premier's amended complaint on September 21, 2018. (ECF No. 103).

There is no question that Byte filed the third-party complaint against Allscripts before its answer to the amended complaint. The question then is whether Byte's answer to MTS's third-party complaint or its answer to Premier's amended complaint should be viewed as the "original answer" for the purposes of Rule 14. In the Third Circuit, an answer to an amended complaint functions as the original answer where the amended complaint establishes new theories of liability. *Carney's Point Metal Processing, Inc. v. RECO Constructors*, No. 04-4869, 2006 WL 924992, at *1 (E.D. Pa. Apr. 2, 2006). MTS asserts claims of breach of contract, common law indemnification, and contribution against Byte in its third-party complaint. (ECF No. 12 ¶¶ 20–34). Premier asserts claims against Byte for violation of the New Jersey Consumer Fraud Act, negligent misrepresentation, and common law negligence. (ECF No. 55 ¶¶ 136–158). Premier's claims against Byte clearly establish new theories of liability, and as such, Byte's answer to Premier's amended complaint functions as the original answer and Byte's joinder of Allscripts complied with Rule 14.

## B. Common Law Indemnification and Contribution

### 1. Indemnification

At the core of the parties' dispute is whether Byte's indemnification claim is the type of indemnification claim New Jersey law permits in the absence of a contract or special legal

relationship between the parties. (ECF Nos. 101-2 at 15; 114 at 24). Indeed, "it is extremely difficult to state any general rule or principle as to when indemnity will be allowed and when it will not." *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 103 N.J. 177, 190 (1986). As such, application of New Jersey's common law of indemnification is "context-sensitive." *In re Tarragon Corp.*, No. 09-1465, 2010 WL 3928496, at *4 n.9 (Bankr. D.N.J. Oct. 1, 2010). This has rendered "[a]pplication of New Jersey's law of indemnification . . . a troublesome task." *SGS U.S. Testing Co. v. Takata Corp.*, No. 09-6007, 2012 WL 3018262, at *4 (D.N.J. July 24, 2012).

Neither party disputes the general tenet that New Jersey allows certain indemnification claims to proceed without a contract or special legal relationship. Byte argues that these facts fall under the purview of the two primary cases on this topic, *Ramos* and *Adler's Quality Bakery Inc. v. Gasteria, Inc.*, 32 N.J. 55, (1960), whereas Allscripts argues that these cases are inapposite and have been cabined to their unique facts. The Court finds Allscripts to have the better argument here.

*Ramos* involved a plaintiff who was injured on the premises of his employer when he tripped over a rut made by the defendant. 103 N.J. at 181. The defendant sought indemnification from the employer. *Id.* at 188. Due to the factual context of this case—a work-related injury— the New Jersey Supreme Court found that "the [New Jersey] legislature ha[d] alleviated [the difficulty in applying common law indemnification] by expressly granting the employer the right to seek indemnification from a third-party tortfeasor when the employer compensates an employee for injuries sustained in the work place." *Id.* at 190. In addition, the *Ramos* Court had to consider an indemnity provision in the contract between defendant and the employer. *Id.* at 191. The case at hand is factually distinguishable in that it is not a case that involves New Jersey's Worker's Compensation Act and there is no contract or indemnification provision at issue. In any event, the

*Ramos* Court refused to allow the defendant to seek implied or contractual indemnification against the employer. *Id.* at 190–93.

In *Adler's*, an airplane collided with a television tower. 32 N.J. at 64. The owner of the plane asserted an indemnity claim against the owner of the TV tower. *Id.* at 79. In analyzing the question of whether the indemnity claim was proper, the Court focused not on the existence of a special relationship, but on the imposition of absolute liability imposed by the statute at issue: N.J.S.A. 6:2-7. *Id.* at 79–80. The Court held that, "if the aircraft owner is able to demonstrate that he is free of fault, and that the strict liability imposed by N.J.S.A. 6:2-7 is merely an imputed or constructive fault, then a showing of another's sole responsibility for the losses will entitle the aircraft owner to indemnity from the person who actually caused the injuries originally complained of." *Id.* at 79. This case involves no statutory strict or absolute liability and *Adler* is not applicable.

The Court also finds *SGS U.S. Testing Co.* instructive. In that case, SGS, the plaintiff, was an "independent testing company" that Takata, the defendant, paid to make sure its seatbelts complied with federal regulations. *SGS U.S. Testing Co.*, 2012 WL 3018262, at *5. The companies had a longstanding business relationship over the course of thirty years, with numerous contracts between the parties. *Id.* The parties did not contend that this relationship was one of the traditional "special relationships" found to give rise to implied indemnity, but rather, SGS argued that that one of the defined special relationships was not necessary to a finding of implied indemnity. *Id.* *SGS* held that the facts did not fall within the "narrow doctrine" of implied indemnity, and that the case resembled more of a vendor-vendee relationship that has traditionally been rejected in the implied indemnity context by New Jersey courts. *Id.* There is far less of a relationship between the parties here. Byte subcontracted to do a portion of a data conversion project that involved migrating data to an Allscripts database. Allscripts, as part of its regular

maintenance, performed a demographics push on that database after Byte had finished converting the data at Premier and MTS' request. Byte's third-party complaint simply indicates that Allscripts got involved either at Premier's request or as part of its regular course of business. The Court declines to extend New Jersey's implied indemnity laws to the situation at hand and will dismiss Byte's indemnity claim against Allscripts.

2. *Contribution*

Byte asserts a claim for contribution under New Jersey's Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-2. "The [JTCL] was enacted to promote the fair sharing of the burden of judgment by joint tortfeasors and to prevent a plaintiff from arbitrarily selecting his or her victim." *Krzykalski v. Tindall*, 232 N.J. 525, 534 (2018) (quoting *Holloway v. State*, 125 N.J. 386, 400–01 (1991)). "Under New Jersey's Joint Tortfeasors Contribution Law, a right of contribution exists between joint tortfeasors where one such tortfeasor pays a money judgment for damages in excess of her pro rata share of that judgment." *Fireman's Fund Ins. Co. v. 360 Steel Erectors, Inc.*, No. 16-2782, 2018 WL 1069417, at *3 (D.N.J. Feb. 26, 2018). Joint tortfeasors are "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." N.J.S.A. 2A:53A-1. Where a defendant is "compelled to pay more than his percentage share" of the damages, that defendant may bring a contribution claim against joint tortfeasors. *Mejia v. Quest Diagnostics, Inc.*, No. A-5708-17T2, 2019 WL 1012532, at *4 (N.J. App. Div. Mar. 4, 2019). The "true test [for joint tortfeasor contribution] is joint liability and *not* joint, common, or concurrent negligence." *Cherry Hill Manor Assocs. v. Faugno*, 182 N.J. 64, 72 (2004) (quoting *Farren v. N.J. Tpk. Auth.*, 31 N.J. Super. 356, 362 (App. Div. 1954)). "[C]ommon liability at the time of the accrual of plaintiff's cause of

action" is the "[s]ine qua non of defendant's contribution right." *Id.* (quoting *Markey v. Skog*, 129 N.J. Super. 192, 200 (Law. Div. 1974).

In *Fireman's Fund*, the Court denied a motion to dismiss where an amended crossclaim alleged "design defects in [the co-defendant's] prefabricated steel components, which . . . , [i]f true, . . . establish[ed] that [the co-defendant] [was] jointly liable for the hangar's collapse." 2018 WL 1069417, at *4. Similarly, in *Katz v. Holzberg*, the Court denied a motion to dismiss a claim for contribution where the "alleged tortious acts overlap[ped] in time and [were] alleged to have caused the same injury." No. 13-1726, 2013 WL 5946502, at *5 (D.N.J. Nov. 4, 2013). Here, Byte's allegations that a demographics push conducted by Allscripts de-linked Premier's patient data after Byte had successfully completed its portion of the data conversion plausibly allege that Allscripts might be at least partially liable for the data loss experienced by Premier. As such, the Court will deny Allscripts' motion to dismiss Byte's claim for contribution.

### IV. CONCLUSION

For the reasons stated above, the Court denies in part and grants in party Allscripts' motion to dismiss. An appropriate Order accompanies this Opinion.

Dated: April 3, 2019

JOSE L. LINARES
Chief Judge, United States District Court